**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| OURARING INC.,<br><br>*Plaintiff*,<br><br>v.<br><br>ULTRAHUMAN HEALTHCARE INC, ULTRAHUMAN HEALTHCARE PVT. LTD., and SVTRONICS, INC.,<br><br>*Defendants*. | Civil Action No. 2:26-cv-953<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Ouraring Inc. ("Oura"), by and through its undersigned counsel, files this complaint under 35 U.S.C. § 271 for Patent Infringement against Defendants Ultrahuman Healthcare Inc., Ultrahuman Healthcare Pvt. Ltd. (collectively, "Ultrahuman"), and SVTronics, Inc. ("SVTronics") (together, "Defendants") and further alleges as follows, upon actual knowledge with respect to itself and its own acts, and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1. This is an action for patent infringement arising under the laws of the United States, 35 U.S.C. § 271 *et seq*. Oura is the owner of all right, title, and interest in United States Patent Nos. D804,471 ("'471 Patent") and 12,769,363 ("'363 Patent") (collectively, "Asserted Patents").

2. Defendants have made, used, offered for sale, sold, and/or imported into the United States, and continue to make, use, offer for sale, sell, and/or import into the United States, products embodying the claimed designs and inventions of the Asserted Patents, including at least the

following products: Ultrahuman Ring PRO, and other Ultrahuman devices with substantially the same design, structure, and features.

## OVERVIEW

3. This is an action for patent infringement by Oura. Originally founded in Finland in 2013, Oura is a pioneer in developing smart ring technology that allows users to take control of their health. Oura set out to develop a product that accurately provides personalized insight into a user's fitness and health by monitoring heart rate, temperature variations, blood oxygen levels, and movement during both sleep and active periods. Unlike other wearables (*e.g.*, wrist wearables) that are typically bulky and can be intrusive or interfere with a person's daily life (*e.g.*, uncomfortable to wear during sleep or for extended periods of time), Oura developed its product in an innovative, attractive, and user-friendly form—a ring.

4. Since its founding, Oura has released five generations of the Oura Ring:




5. Backed by over a decade of experience and research, Oura's premier Oura Ring has received numerous awards for its innovation, including the 2020 and 2025 TIME Magazine's Best

Invention, TIME 100 Most Influential Companies (2025), 2022 Best Sleep Tracker by Men's Health Magazine, 2023 CNBC's Disruptor 50 List, 2023 Health Fitness Award, Cosmopolitan Best Overall Fitness Ring for 2024, Women's Health Magazine Sleep Tracker 2024, New York Times Best Sleep Tracker 2025, WIRED Best Ring Fitness Tracker 2023, and Forbes Best Sleep Tracker 2024, among other recognitions.

6. Oura's success has attracted copycats and knockoffs seeking to benefit from the market that Oura built through innovation and hard work. As Oura has grown, so too has its protection of its intellectual property. Oura has amassed a patent portfolio related to the structure, design, and manufacturing of smart ring wearables and actively enforces its patents through licensing and/or litigation. Other smart ring manufacturers recognize the value of Oura's intellectual property and have obtained licenses from Oura in the recent past.

7. Oura is forced to bring this action against Defendants as a result of Defendants' knowing and ongoing infringement of Oura's patents as further described herein.

8. Following in Oura's footsteps, on information and belief, Ultrahuman launched its original Ultrahuman Ring product in July 2022, nearly seven years after Oura's original Gen 1. Since then, Ultrahuman has set out on a campaign to copy Oura and benefit from Oura's success.

9. The foregoing actions caused Oura to file its first suit against Ultrahuman on September 1, 2023, in this District, alleging copyright and patent infringement claims based on the Ultrahuman Ring AIR. *See Oura Health Oy et al. v. Ultrahuman Healthcare Pvt. Ltd. et al.*, Case No. 2:23-cv-00396-JRG-RSP, Dkt. 1 (E.D. Tex. Sept. 1, 2023) (hereinafter, "*Ultrahuman I*").

10. On March 13, 2024, Oura filed a Section 337 Complaint in the International Trade Commission ("ITC") against entities related to Ultrahuman. *See Certain Smart Wearable Devices, Systems, and Components Thereof,* Inv. No. 337-TA-1398. Ultimately, the Commission found a

violation of Section 337 based on a finding that Ultrahuman's smart rings infringe claims 1, 2, and 12-14 of U.S. Patent No. 11,868,178 (the "'178 Patent") and issued remedial orders accordingly. *See Certain Smart Wearable Devices, Systems, and Components Thereof*, Inv. No. 337-TA-1398, Notice of the Comm'n Final Determination (Aug. 21, 2025).

11. On August 22, 2025, following the ITC's Final Determination, Ultrahuman filed a ruling request pursuant to 19 C.F.R. Part 177 seeking a ruling that Ultrahuman's Ring PRO ("Redesigned Ring") does not infringe claims 1, 2, and 12-14 of the '178 Patent. On March 6, 2026, the Exclusion Order Enforcement Branch of the U.S. Customs and Border Protection ("CBP") issued a ruling that the Redesigned Ring does not infringe the '178 Patent.

12. On information and belief, Ultrahuman began selling the Ultrahuman Ring PRO in the United States in May 2026, with shipments beginning in June 2026.

13. The CBP ruling addressed only the '178 Patent and did not consider any other Oura patent. Ultrahuman nonetheless launched the Ring PRO with knowledge of Oura's patent portfolio, gained through years of litigation with Oura, and that the Ring PRO infringes the Asserted Patents. To protect its patent rights, Oura is now forced to file this complaint of patent infringement.

## **PARTIES**

14. Ouraring Inc. is a Delaware corporation with its principal place of business at 500 Pine Street, San Francisco, California 94108.

15. On information and belief, Ultrahuman Healthcare Inc. is a Delaware corporation. Ultrahuman Healthcare Inc. may be served through its registered agent Harvard Business Services, Inc., 16192 Coastal Hwy, Lewes, Delaware 19958.

16. On information and belief, Ultrahuman Healthcare Pvt. Ltd. is an Indian Non-Government Company incorporated in India with its principal place of business located at No. 4088/799, Third Floor, V K Paradise Sector-2, HSR Layout, Bengaluru, Karnataka 560102, India. On information and belief, Ultrahuman Healthcare Inc. is a wholly owned subsidiary of Ultrahuman Healthcare Pvt. Ltd.

17. On information and belief, SVTronics is a Texas corporation. SVTronics may be served through its registered agent Jasmat Sutaria, 3465 Technology Drive, Plano, Texas 75074.

18. On information and belief, Defendants have formed a business partnership and conduct business operations in the Eastern District of Texas at facilities located at 3465 Technology Drive, Plano, Texas 75074 ("Plano Facility"). *See* https://mashable.com/article/ultrahuman-ring-us-factory-expansion.

19. On information and belief, Defendants employ full-time personnel such as sales personnel and engineers in this District, including at the Plano Facility.

20. Defendants offer their products and services, including the products accused of infringement in this Complaint, to customers and potential customers located in the Eastern District of Texas.

**JURISDICTION AND VENUE**

21. Oura brings this action for patent infringement under the patent laws of the United States, 35 U.S.C. § 271 *et seq*.

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

23. This Court has personal jurisdiction over Defendants in this action pursuant to due process and/or the Texas Long Arm Statute, by virtue of at least the substantial business each

Defendant conducts in this forum, directly and/or through intermediaries, including but not limited to: (1) having committed acts within the Eastern District of Texas giving rise to this action and having established minimum contacts with this forum such that the exercise of jurisdiction over each Defendant would not offend traditional notions of fair play and substantial justice; (2) having directed its activities to customers in the State of Texas and this District, solicited business in the State of Texas and this District, transacted business within the State of Texas and this District and attempted to derive financial benefit from residents of the State of Texas and this District, including benefits directly related to the instant patent infringement causes of action set forth herein; (3) having placed their products and services into the stream of commerce throughout the United States and having been actively engaged in transacting business in Texas and in this District; and (4) either individually, as members of a common business enterprise, and/or in conjunction with third parties, having committed acts of infringement within Texas and in this District.

24. In the alternative, this Court has personal jurisdiction over Ultrahuman Healthcare Pvt. Ltd. under Federal Rule of Civil Procedure 4(k)(2) because Oura's claims arise under federal law, Ultrahuman Healthcare Pvt. Ltd. is not subject to the jurisdiction of the courts of general jurisdiction of any state, and exercising jurisdiction is consistent with the Constitution and laws of the United States given Ultrahuman Healthcare Pvt. Ltd.'s extensive contacts with the United States as a whole, including through the design, importation, manufacture, marketing, and sale of the accused products in the United States.

25. For example, SVTronics maintains regular and established offices in the Eastern District of Texas, including at 3465 Technology Dr., Plano, TX 75074. Further, on information and belief, Ultrahuman directs and controls the actions of SVTronics, or acts in concert with SVTronics, such that it too maintains regular and established offices in the Eastern District of

Texas, including at 3465 Technology Dr., Plano, TX 75074. Furthermore, on information and belief, the purposeful contacts by SVTronics are imputable to Ultrahuman.

26. Upon information and belief, Defendants' Plano Facility serves as a hub for their ring product with divisions, including wearables, marketing, and product management being located in the Plano Facility in this District. Defendants have described their "plans to fulfill ***all*** U.S. orders out of its Texas-based facility." *See* https://mashable.com/article/ultrahuman-ring-us-factory-expansion (emphasis added). Specifically, "[t]he 'UltraFactory' is a partnership with U.S.-based SVtronics and has plans to expand annual manufacturing capacity to 500,000, meeting U.S. demand." *Id.* In Ultrahuman's founder and CEO's words, "[t]he UltraFactory in Plano, Texas, allows us to deliver products faster, enhance quality control, and further strengthen our commitment to American consumers to bring them cutting-edge health technology." *Id.*

27. Defendants, directly or through their distribution network, have purposefully and voluntarily placed infringing products in the stream of commerce knowing and expecting them to be purchased and used by consumers in the United States, including in the Eastern District of Texas.

28. On information and belief, Defendants have also derived substantial revenues from infringing acts in the Eastern District of Texas, including from the sale and use of infringing products (including the accused products, to be defined below).

29. Venue is proper in this District under 28 U.S.C. § 1400(b) as to Ultrahuman Healthcare Inc. and SVTronics, and under 28 U.S.C. § 1391(c)(3) as to Ultrahuman Healthcare Pvt. Ltd.

30. Venue is proper as to Ultrahuman Healthcare Inc. under 28 U.S.C. § 1400(b) because Ultrahuman Healthcare Inc. has committed acts of infringement in this District, including

by making, using, selling, offering to sell, and importing the accused products in this District, and, on information and belief, has a regular and established place of business in this District at the Plano Facility, which Ultrahuman publicly holds out as its "UltraFactory" and from which it manufactures the accused products and fulfills U.S. orders.

31. Venue is proper as to Ultrahuman Healthcare Pvt. Ltd. in this District because Ultrahuman Healthcare Pvt. Ltd. is not resident in the United States, and thus may be sued in any judicial district pursuant to 28 U.S.C. § 1391(c)(3).

32. Venue is proper against SVTronics in this District pursuant to 28 U.S.C. § 1400(b) because SVTronics is incorporated in Texas and, on information and belief, maintains its registered office and principal place of business in this District, and independently because SVTronics has committed acts of infringement in this District, including by manufacturing the accused products at the Plano Facility, and has a regular and established place of business in this District at 3465 Technology Dr., Plano, TX 75074.

33. Defendants are properly joined under 35 U.S.C. § 299(a)(1) because Defendants, through their own acts and/or through the acts of other entities acting as their agent, representative, or alter ego, commonly and/or jointly design, manufacture, and/or sell accused products such that at least one right to relief is asserted against Defendants jointly, severally, and in the alternative with respect to the same transactions, occurrences, or series of transactions or occurrences relating to the making, using, selling, and/or offering to sell in, and/or importing into the United States the same accused products.

34. Defendants are properly joined under 35 U.S.C. § 299(a)(2) because Defendants, through their own acts and/or through the acts of other entities acting as their agent, representative, or alter ego, make, use, sell, and/or offer to sell in, and/or import into the United States the same

or similar accused products, such that questions of fact will arise that are common to all Defendants.

35. Upon information and belief, Ultrahuman and SVTronics, acting in concert, have placed the accused products in the stream of commerce, knowing the likely destination of the products in the United States and this District. Upon information and belief, Ultrahuman has further purposefully availed itself of the United States and this District by directing SVTronics to take action in the United States and this District, including, upon information and belief, manufacturing the accused products in this District.

## COUNT 1 – INFRINGEMENT OF U.S. PATENT NO. D804,471

36. Oura incorporates paragraphs 1-35 above by reference.

37. U.S. Patent No. D804,471 ("'471 Patent," attached hereto as Exhibit 1) duly issued on December 5, 2017, and is entitled *Wearable Computing Device*.

38. Oura is the owner by assignment of the '471 Patent and possesses all rights under the '471 Patent, including the exclusive right to recover for past and future infringement.

39. Defendants have made, used, offered for sale, sold, and/or imported into or in the United States, and continue to make, use, offer for sale, sell, and/or import in the United States, at least the following products having substantially the same overall appearance as the design claimed in the '471 Patent: the Ultrahuman Ring PRO and any other Ultrahuman devices that incorporate the design claimed by the '471 Patent (collectively, "the Accused Ultrahuman Design"). On information and belief, SVTronics manufactures the Accused Ultrahuman Design at the Plano Facility, and Ultrahuman imports, offers for sale, and sells the Accused Ultrahuman Design in the United States.

40. The table below compares exemplary figures from the ’471 Patent with exemplary images of the Accused Ultrahuman Design (*e.g.*, Ultrahuman Ring PRO). A complete version of Table 1 comparing all figures from the ’471 Patent to corresponding views of the Accused Ultrahuman Design is attached as Exhibit 2. The Accused Ultrahuman Design has been advertised, marketed, promoted, and made available for purchase to all Ultrahuman site visitors since at least May 2026.

| **TABLE 1** | |
| --- | --- |
| **Patented ’471 Design** | **Accused Ultrahuman Design** |
|  |  |

| **TABLE 1** | |
|---|---|
| **Patented ’471 Design** | **Accused Ultrahuman Design** |
|  |  |
|  |  |

41. An ordinary observer, familiar with the prior art and giving such attention as a purchaser usually gives, would be deceived into purchasing the Accused Ultrahuman Design supposing it to be the design claimed in the ’471 Patent because the overall appearance of the claimed design and the Accused Ultrahuman Design is substantially the same.

42. By the foregoing acts, Defendants have infringed and continue to infringe the ’471 Patent in violation of 35 U.S.C. § 271.

43. The foregoing features of the Accused Ultrahuman Design and Ultrahuman’s description and/or demonstration thereof, including in advertising, reflect Defendants’ direct infringement under 35 U.S.C. § 271(a).

44. Defendants have also indirectly infringed the ’471 Patent in this District and elsewhere in the United States by actively inducing infringement under 35 U.S.C. § 271(b). For example, on information and belief, Ultrahuman Healthcare Pvt. Ltd. directs and controls the manufacture of the Accused Ultrahuman Design by SVTronics at the Plano Facility and the importation, offer for sale, and sale of the Accused Ultrahuman Design by Ultrahuman Healthcare Inc., and Defendants encourage distributors, retailers, and customers to sell and use the Accused Ultrahuman Design through marketing, advertising, and sales channels in the United States, knowing and intending that those acts infringe the ’471 Patent.

45. Defendants have had knowledge of the ’471 Patent since at least 2024, when Defendants admitted to analyzing Oura’s patent portfolio, and/or Oura’s marking of its Oura Ring products with the ’471 Patent under 35 U.S.C. § 287(a), including virtual marking at https://ouraring.com/intellectual-property-notice?srsltid=AU7gw4WsQKNB_zqmY-94sIJHucLaBEztNZ7LQQHDqUEcadj6trM1rR3V, and in any event since no later than the filing of this Complaint.

46. Defendants’ infringement of the ’471 Patent has been and continues to be willful, deliberate, and intentional. With knowledge of the ’471 Patent and of their infringement, and following years of litigation in which Oura asserted its smart ring intellectual property against Ultrahuman, Defendants chose to launch and continue selling a ring with substantially the same appearance as Oura’s patented design. Defendants’ conduct is egregious and warrants enhanced damages under 35 U.S.C. § 284.

47. Oura has been and continues to be damaged by Defendants’ infringement of the ’471 Patent.

48. Under 35 U.S.C. § 289, Defendants are liable to Oura to the extent of their total profit, but not less than $250, from the manufacture, sale, and offer for sale of articles of manufacture to which the design claimed in the ’471 Patent, or a colorable imitation thereof, has been applied, including the Accused Ultrahuman Design.

49. Oura and Defendants are direct competitors in the smart ring market. Defendants’ infringement of the ’471 Patent has caused and will continue to cause Oura irreparable harm, including lost sales, price erosion, and loss of market share and goodwill, for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## COUNT 2 – INFRINGEMENT OF U.S. PATENT NO. 12,769,363

50. Oura incorporates paragraphs 1-49 above by reference.

51. U.S. Patent No. 12,769,363 (the “’363 Patent,” attached hereto as Exhibit 3) duly issued on October 20, 2026, and is entitled *Wearable Computing Device*.

52. Oura is the owner by assignment of the ’363 Patent and possesses all rights under the ’363 Patent, including the exclusive right to recover for past and future infringement.

53. The ’363 Patent is directed to a wearable ring device including, for example, a wearable ring device configured to be worn on a finger of a user. In particular, the apparatus disclosed in the ’363 Patent ensures that a user can track their physical movement, skin temperature, and heart rate from sensing data obtained from the wearable ring device.

54. Specifically, the ’363 Patent discloses an exemplary wearable ring device to be worn on a finger of a user including “a housing,” “a curved battery,” “one or more magnets,” “a printed circuit board,” “an accelerometer,” “a temperature sensor,” “a first light emitting diode (LED),” and “a light sensor” that all work in conjunction to provide a wearable ring device. Further, the curved battery has a size and shape configured to fit within a curved portion of the

housing, extending along a first portion of a curved perimeter of the housing. The printed circuit board is electrically coupled with the curved battery and extends along a second portion of the curved perimeter of the housing. The one or more components (*e.g.*, the accelerometer, temperature sensor, first LED, and light sensor) are electrically coupled to the printed circuit board, one or more processors, and the curved battery. An exemplary configuration is shown below in Figures 3B and 4 of the '363 Patent.




FIG. 3B




FIG.4

55. Defendants have directly infringed one or more claims of the ’363 Patent in this District and elsewhere in the United States, including at least claim 10 literally and/or under the doctrine of equivalents, by or through making, using, importing, offering for sale, and/or selling their smart ring technology, including at least Defendants’ products having materially similar configurations to the claimed wearable ring device.

56. For example, Defendants have literally and/or under the doctrine of equivalents directly infringed at least claim 10 of the ’363 Patent in this District and elsewhere in the United States by or through making, using, importing, offering for sale, and/or selling at least the following: Ultrahuman Ring PRO, and other Ultrahuman devices with the ability to be a finger-worn wearable ring device (collectively, “the ’363 Accused Products”). Oura reserves the right to discover and pursue any additional infringing devices that incorporate infringing functionalities. For the avoidance of doubt, the ’363 Accused Products are identified to describe Defendants’ infringement and in no way limit the discovery and infringement allegations against Defendants concerning other devices that incorporate the same or reasonably similar functionalities.

57. Each of the ’363 Accused Products is observed to be a wearable ring device intended to be worn on a finger of the user. For example, each of the ’363 Accused Products is observed to be a smart ring wearable device. Each of the ’363 Accused Products is observed to detect physical movement, skin temperature, and heart rate of the user. For example, each of the ’363 Accused Products is designed for general wellness and lifestyle tracking, including tracking sleep, recovery, activity, and metabolic indicators using heart-rate sensing, skin-temperature sensing, and a six-axis motion sensor to collect physiological data.

58. Each of the ’363 Accused Products is observed to include a housing comprising an exterior surface of the wearable ring device and an interior surface of the wearable ring device.

For example, the ’363 Accused Products include a unibody housing of titanium. The ’363 Accused Products are further observed to include an exterior surface and interior surface, where the interior surface is intended to contact the user when worn by the user.

59. Upon information and belief, each of the ’363 Accused Products is further observed to include a curved battery, a printed circuit board, one or more magnets, and one or more components. Additionally, each of the ’363 Accused Products is observed to include one or more components electrically coupled with the printed circuit board. For example, the ’363 Accused Products include a six-axis motion sensor to detect a user’s physical movement, a temperature sensor to detect a user’s skin temperature, red LEDs, green LEDs, infrared LEDs, and an infrared photoplethysmography (PPG) sensor to emit and detect visible and infrared or near-infrared light used to measure the user’s heart rate. For example, each of the ’363 Accused Products can provide users with various biometric data, including a user’s temperature, heart rate, and physical movement. *See, e.g.*, https://www.ultrahuman.com/ring/buy/us/.

60. Upon information and belief and as shown below, images of exemplary ’363 Accused Products, including the Ultrahuman Ring PRO, provide non-limiting examples of the ’363 Accused Products infringing at least claim 10 of the ’363 Patent by including “a housing,” “a curved battery,” “one or more magnets,” “a printed circuit board,” and “one or more components,” such as “an accelerometer,” “a temperature sensor,” “a first LED,” and “a light sensor,” as claimed in the ’363 Patent:

# Unibody Titanium Build

Ring PRO features a unibody architecture developed with fighter jet-grade titanium that's engineered for long-term durability.





**Connectivity**

BLE 5.3 for stable, seamless transfers, even during continuous use.

**Processing**

On-chip ML enabled faster processing – built to handle advanced health tracking with speed, efficiency, and reliability.

**Charging**

DC magnetic charging pins for quicker recharges and long-term battery health.

**ProRelease Technology**

Enables Ring PRO to be cut apart more easily in the event of swelling or injury to the finger.

| | |
|---|---|
| Processor | Dual-core with on-chip machine learning |
| Heart-Rate Sensor | Redesigned PPG with improved signal quality during sleep and recovery |
| Sensors | Temperature, redesigned PPG, 6-axis IMU |

61. Specifically, the ’363 Accused Products include a housing comprising an exterior surface of the wearable ring device and an interior surface, where at least a portion of the interior surface is configured to contact the user when the wearable ring device is worn by the user:




IMG_0142.JPG

62. Both the teardowns and CT scans of the ’363 Accused Products also confirm a curved battery having a size and shape configured to fit within a curved portion of the housing, the curved battery extending along a first portion of a curved perimeter of the housing:




overview_ring.jpg




ID_3.jpg

63. Upon information and belief, the ’363 Accused Products also are observed to include one or more magnets configured to cause an attractive force between the wearable ring device and an external charging device through the interior surface of the wearable ring device and

facilitate charging of the curved battery. For example, Ultrahuman advertises "UltraSnap Charging Technology" that magnetically clicks into the PRO Charger:

## UltraSnap™ Charging Technology

Ring PRO magnetically clicks into the PRO Charger, using an energy-efficient mechanism that generates less heat than conventional wireless charging. Powered by the new UltraSnap Charging Technology, the PRO Charger is engineered to preserve the long-term performance of Ring PRO's battery.

### Charging

DC magnetic charging pins for quicker recharges and long-term battery health.




https://www.ultrahuman.com/us/ring-pro/




magnets_100x.jpg

64. The ’363 Accused Products include a printed circuit board electrically coupled with the curved battery, the printed circuit board extending along a second portion of the curved perimeter of the housing:




overview_ring.jpg







ID_3.jpg

65. The ’363 Accused Products further include one or more components such as an accelerometer, temperature sensor, and multiple light emitting diodes (LEDs) electrically coupled with the curved battery and the printed circuit board as advertised by Ultrahuman:

**Sensors**

- PPG sensor (heart rate and $SpO_2$)
- Skin temperature sensor
- 6 DOF motion sensor

Ultrahuman Ring PRO User Manual (available at https://fccid.io/2A99XUHRINGPRO01/User-Manual/UserManual-English-9088882)

| | |
|---|---|
| Processor | Dual-core with on-chip machine learning |
| Heart-Rate Sensor | Redesigned PPG with improved signal quality during sleep and recovery |
| Sensors | Temperature, redesigned PPG, 6-axis IMU |
| On-Device Storage | Up to 250 days of data (internal and external flash) |
| Connectivity | Bluetooth Low Energy, EMF-safe |

https://www.ultrahuman.com/us/ring-pro/buy/




Source: https://www.ultrahuman.com/us/ring-pro/buy/

66. The foregoing features of the ’363 Accused Products and Ultrahuman’s description and/or demonstration thereof, including in user manuals and advertising, reflect Defendants’ direct

infringement by satisfying every element of at least claim 10 of the ’363 Patent, under 35 U.S.C. § 271(a).

67. Defendants have indirectly infringed at least claim 10 of the ’363 Patent in this District and elsewhere in the United States by, among other things, actively inducing the use, offering for sale, selling, or importation of at least the ’363 Accused Products. Defendants’ customers who purchase devices and components thereof and operate such devices and components in accordance with Defendants’ instructions directly infringe one or more claims of the ’363 Patent in violation of 35 U.S.C. § 271. Defendants instruct their customers through at least user guides or websites, such as those located at: https://www.ultrahuman.com/; https://www.ultrahuman.com/ring/buy/us/; https://www.ultrahuman.com/us/ring-pro/; https://blog.ultrahuman.com/blog/; and https://blog.ultrahuman.com/blog/getting-started-with-the-ultrahuman-ring-onboarding-guide/.

68. For example, as shown above, Defendants instruct their customers to wear the ’363 Accused Products on their finger because “the index finger usually gives the best sensor data.” *See* https://www.ultrahuman.com/blog/getting-started-with-the-ultrahuman-ring-onboarding-guide/. Defendants further instruct their customers to track their health and sleep through the use of the ’363 Accused Products.

69. Defendants are thereby liable for infringement of the ’363 Patent pursuant to 35 U.S.C. § 271(b).

70. Defendants have indirectly infringed at least claim 10 of the ’363 Patent, by, among other things, contributing to the direct infringement of others, including customers of the ’363 Accused Products by making, offering to sell, or selling, in the United States, or importing a component of a patented machine, manufacture, or combination, or an apparatus for use in

practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in infringement of the ’363 Patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.

71. For example, upon information and belief the ’363 Accused Products include hardware and software for implementing health tracking functionality in a smart ring wearable, including a curved battery, processors, housing, magnets, sensors, and a printed circuit board. These are components of a patented machine, manufacture, or combination, or an apparatus for use in practicing a patented process. Furthermore, these components are a material part of the invention and upon information and belief are not a staple article or commodity of commerce suitable for substantial non-infringing use. Thus, Defendants are liable for infringement of the ’363 Patent pursuant to 35 U.S.C. § 271(c).

72. Defendants have had knowledge of the ’363 Patent since at least the date the ’363 Patent issued and/or the filing of this Complaint. On information and belief, Defendants also knew of the application that issued as the ’363 Patent before issuance, including through the parties’ prior litigation and/or Defendants’ monitoring of Oura’s published patent applications. Defendants thus have known and intended that their continued actions would actively induce and contribute to actual infringement of at least claim 10 of the ’363 Patent.

73. Defendants’ infringement of the ’363 Patent has been and continues to be willful, deliberate, and intentional. With knowledge of the ’363 Patent and of their infringement since at least the filing of this Complaint, through the parties’ prior litigation and/or Defendants’ monitoring of Oura’s published patent applications, Defendants have continued to make, import, offer for sale, and sell the ’363 Accused Products rather than cease their infringing conduct. Defendants’ conduct is egregious and warrants enhanced damages under 35 U.S.C. § 284.

74. Oura has been and continues to be damaged by Defendants' infringement of the '363 Patent.

75. Defendants' infringement of the '363 Patent has caused and will continue to cause Oura irreparable harm, including lost sales, price erosion, and loss of market share and goodwill in the smart ring market in which Oura and Defendants directly compete, for which there is no adequate remedy at law, unless Defendants are enjoined by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Oura prays for relief as follows:

A. A judgment that Defendants have directly infringed the '471 Patent under 35 U.S.C. § 271(a), and have directly infringed one or more claims of the '363 Patent under 35 U.S.C. § 271(a), literally and/or under the doctrine of equivalents;

B. A judgment that Defendants have indirectly infringed the '471 Patent under 35 U.S.C. § 271(b), and have indirectly infringed one or more claims of the '363 Patent under 35 U.S.C. § 271(b) and (c);

C. An award of damages under 35 U.S.C. § 284 adequate to compensate Oura for Defendants' infringement of the Asserted Patents, in no event less than a reasonable royalty, for the past infringement and any continuing infringement through the date judgment is entered, together with supplemental damages for any infringement not presented at trial and an accounting of all infringing acts;

D. An award under 35 U.S.C. § 289 of Defendants' total profit from the manufacture, sale, and offer for sale of articles of manufacture bearing the design claimed in the '471 Patent, at Oura's election as an alternative to damages under 35 U.S.C. § 284 for that patent;

E. A permanent injunction under 35 U.S.C. § 283 enjoining Defendants and their officers, agents, servants, employees, attorneys, and all others in active concert or participation with them from further infringement of the Asserted Patents or, in the alternative, an award of an ongoing royalty for any post-judgment infringement;

F. A judgment that Defendants' infringement has been willful and an award of enhanced damages up to three times the amount found or assessed pursuant to 35 U.S.C. § 284;

G. A declaration that this case is exceptional under 35 U.S.C. § 285 and an award of Oura's reasonable attorneys' fees;

H. An award of pre-judgment and post-judgment interest, including under 35 U.S.C. § 284 and 28 U.S.C. § 1961, and Oura's costs; and

I. An award to Oura of such further relief at law or in equity as the Court deems just and proper.

## JURY TRIAL DEMANDED

Oura hereby demands a trial by jury.

Dated: October 22, 2026

By: */s/ James A. Fussell, III*

James A. Fussell, III (Lead)
Jasjit S. Vidwan
Michael L. Lindinger
Tiffany A. Miller
Clark S. Bakewell
Julia Haines
Amanda Stephenson
Seth W. Bruneel
Courtney Krawice
So Ra Ko
Paul Choi
MAYER BROWN LLP
1999 K Street, N.W.
Washington D.C. 20006
(202) 263-3000
jfussell@mayerbrown.com
jvidwan@mayerbrown.com
mlindinger@mayerbrown.com
tmiller@mayerbrown.com
cbakewell@mayerbrown.com
jhaines@mayerbrown.com
astephenson@mayerbrown.com
sbruneel@mayerbrown.com
ckrawice@mayerbrown.com
sko@mayerbrown.com
pchoi@mayerbrown.com

Robert G. Pluta
MAYER BROWN LLP
71 S. Wacker Drive
Chicago, IL 60606
(312) 782-0600
rpluta@mayerbrown.com

Geoff Culbertson (Texas Bar No. 24045732)
Kelly Tidwell (Texas Bar No. 20020580)
Patton, Tidwell & Culbertson, LLP
2800 Texas Blvd. (75503)
Post Office Box 5398
Texarkana, TX 75505-5398
(P) (903) 792-7080
(F) (903) 792-8233
gpc@texarkanalaw.com
kbt@texarkanalaw.com

*Counsel for Plaintiff Ouraring Inc.*